## STATE OF CONNECTICUT *v.* VANCE JOHNSON
## (AC 18431)

Foti, Landau and Spallone, Js.

Argued March 29—officially released May 25, 1999

*Robert G. Golger,* special public defender, for the appellant (defendant).

*Ellen A. Jawitz*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kevin Murphy*, assistant state's attorney, for the appellee (state).

*Opinion*

SPALLONE, J. The defendant, Vance Johnson, appeals from the judgment of conviction, rendered after a jury trial, of the crime of murder in violation of General Statutes § 53a-54a.[1] The defendant appeals from his conviction of murder alleging insufficient evidence to support the trial court's instruction on combat by agreement and also complains that the court improperly marshaled the evidence that the defendant and the victim agreed to engage in combat. We affirm the judgment of the trial court.

The defendant was charged with murder in violation of § 53a-54a and criminal possession of a firearm in violation of General Statutes § 53a-217. On December 9, 1996, the defendant pleaded guilty to criminal possession of a firearm and was sentenced to five years in the custody of the commissioner of correction.

After a trial to a jury, the defendant was found guilty of murder and, on March 14, 1997, was sentenced to sixty years to run concurrently with the weapons count, for an effective sentence of sixty years imprisonment.

On the basis of the evidence adduced at trial, the jury reasonably could have found the facts as follows. The defendant and the victim, Christopher Gills, had been friends for years, but they became estranged about two months before the shooting. On June 28, 1994, the night before the shooting, the defendant went to the

---

[1] General Statutes § 53a-54a provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

victim's mother's house searching for him. In a discussion with Kevin Walker, a friend of the victim, the defendant, who had a gun, told Walker that he was going to shoot the victim when he found him.

About noon on June 29, 1994, the defendant was at a car wash on Homestead Avenue, near the corner of Woodland Street in Hartford. Seeing the victim driving by, the defendant flagged him down. The victim, who was with Damion Bullock, pulled the car over, exited and began talking to the defendant. Bullock remained in the passenger seat of the car. At that point, the defendant displayed a gun that he had wrapped in a shirt. The victim went back to his car, reached under the seat and brought out a gun.

The victim laid the gun on the roof of his car and put his hand over the gun. The defendant reached back to get the clip for his gun from another man who was standing nearby. When the defendant removed the shirt that was covering the gun, Bullock exited the car and fled.

The defendant and the victim continued to argue as they moved into the street. The victim began to walk backward, with his palms facing forward and his elbows back. At that moment, there was nothing in the victim's hands. The defendant fired three shots and the victim fell to the ground. The defendant walked over to where the victim lay, then returned to his car and drove away. The victim sustained two gunshot wounds to his abdomen, which resulted in his death from loss of blood.

A few hours after the shooting, Kevin Walker, Eddie Walker and other friends of the victim were standing in front of 328 Cornwall Street. The defendant drove up in a car, displayed a gun, and said, "Somebody out there don't like what I did to your boy." The defendant continued down the street, turned the car around, and fired a number of shots as he drove by the group.

At trial, the defendant admitted that he shot the victim, claiming that he did so in self-defense. The defendant testified that while standing in front of the car wash, gun in hand, he saw the victim drive by. He wanted to speak to the victim about a stolen cellular telephone sold by the victim, which was no longer working. He waved the victim over and they began to talk. The defendant took the shirt off the gun because he wanted to show it to the victim, who sold guns as well as telephones. The defendant stated to the victim that he wanted to exchange the telephone and the victim became angry. They walked to the victim's car where the victim opened the driver's door and leaned in.

The defendant testified that at that point the victim leaned on the roof of the car and pointed a gun at him. The defendant's companion came over and handed him a clip, which the defendant inserted into his gun. The victim then walked into the middle of the street and asked the defendant if he wanted "trouble." The defendant, carrying his loaded weapon, joined the victim in the street. The defendant stated that he attempted to talk to the victim, but the victim began to put a bullet in the chamber of his gun. Although the victim was unsuccessful in chambering the bullet, the defendant fired three shots at the victim from a distance of twelve to fifteen feet.

The defendant also testified that he fled to Middletown where he used an alias and a forged identity card. Before being arrested, the defendant called the police and attempted to implicate someone else in the shooting. After his arrest, the defendant told the police that he was at his grandmother's house at the time of the shooting.

I

The defendant's first claim is that there was insufficient evidence to support the trial court's instruction

of the combat by agreement exception to self-defense. We disagree.

After instructing the jury on self-defense, the duty to retreat and the initial aggressor exception to self-defense, the trial court instructed the jury on combat by agreement as follows: "Another exception to justification is the combat by agreement situation. And as you will recall [General Statutes] § 53a-19 provides that a person is not justified in using physical force when the physical force involved was the product of a combat by agreement not specifically authorized by law. Under this section, it's not necessary that there be a formal agreement but such an agreement may be inferred from the conduct of the parties. To infer such an agreement you must look at all the circumstances leading up to and preceding the shooting as well as all of the circumstances surrounding this shooting itself based on the entire evidence presented and your own credibility assessments. Bearing in mind, of course, that the state has the burden of disproving self-defense beyond a reasonable doubt. The combat by agreement then is an exception to the justification defense. And it does not require a formal agreement and it presents a question whether from . . . the credible evidence whether or not an agreement can be inferred. And you can consider the circumstances that—in that regard—that preceded the shooting. . . ."

The defendant took exception to that charge on the ground that, inter alia, there was insufficient evidence of an agreement to engage in combat. The following day, the trial court explained, on the record, that pursuant to *State* v. *Silveira*, 198 Conn. 454, 471, 503 A.2d 599 (1986), there need not be a formal or express agreement, noting that an agreement may be inferred from the facts and circumstances. The defendant again took exception to the instruction.

The trial court "should not submit to the jury any issue that is foreign to the facts in evidence or for which

no evidence was offered." *State* v. *Shaw*, 24 Conn. App. 493, 498, 589 A.2d 880 (1991). In reviewing a claim that there was insufficient evidence to support an instruction, the reviewing court must consider the evidence in the light most favorable to upholding the instruction. *State* v. *Small*, 242 Conn. 93, 102, 700 A.2d 617 (1997). The question on appeal is whether, viewing the evidence in this light, it was sufficient to support a reasonable inference that the physical force employed by the defendant was the product of an agreement not authorized by law. See *State* v. *Silveira*, supra, 198 Conn. 471.

Although there is no formal agreement in this matter, there was ample evidence that the defendant and the victim agreed either expressly or tacitly to engage in combat. Specifically, the evidence showed, viewed in the light most favorable to sustaining the instruction, that the defendant went looking for the victim; the defendant saw the victim driving a car and flagged him down; the victim exited his car and began talking to the defendant; the defendant complained about a cellular telephone, causing the victim to become angry; the two men began to argue, the defendant displayed his gun, which was wrapped in a shirt; the victim went to his car and took a gun from it; the victim placed his gun on the roof of the car and put his hand over it; the defendant unwrapped his gun and his companion handed him a clip of ammunition; the defendant put the clip in his gun; the victim walked into the middle of the street and asked the defendant if he wanted "trouble"; the defendant joined the victim in the middle of the street; the victim unsuccessfully tried to chamber a bullet in his gun; the defendant then fired three shots at the victim from a distance of twelve to fifteen feet.

The trial court had ample evidence before it to charge that the victim and the defendant agreed to engage in combat by agreement. The two men argued, displayed their weapons, walked to the middle of the street armed

and angry and confronted each other. The defendant fired three shots that killed the victim. The trial court properly instructed the jury on the combat by agreement exception to self-defense.

## II

The defendant also contends that the trial court unfairly marshaled the evidence that the defendant and the victim had agreed to engage in combat. We are not persuaded.

The defendant challenges the following portion of the trial court's instruction, which was delivered immediately after the court's charge on the law regarding combat by agreement. "[I]n this case, *if you believe the witness*, I guess it was Kevin Walker, regarding what transpired at the Palm Street Market that morning, *if you accept . . . the evidence* as to what occurred the night before, *if you find that evidence credible*, if you consider the statements of the defendant as those witnesses testified to them as being made the night before and in front of the Palm Street Market with the display of a gun the, as I recall, the witness regarding the Palm Street Market testified that the defendant had said, displaying the gun, that he was going to shoot Christopher Gill or Bump. And then a few hours later Christopher Gill is flagged down by the car wash on Homestead Avenue, he stops and there both the defendant and the victim are out of the car. There's an argument . . . there is evidence that at some point the victim went back to the car, retrieved a gun, then came back in the direction of the defendant as I recall the testimony and at the same time the—or about the same time the defendant is unwrapping his firearm and the other gentleman with him, Dice, whatever, hands him the clip and then there's a shooting.

"*Now that is the evidence. Whether any or all or part of that is credible that's something you ladies and*

*gentlemen will have to determine whether or not from that evidence and all the other evidence and circumstances in the case there can be inferred an agreement.* It doesn't have to be a formal, whether or not there can be inferred an agreement to engage in combat, in this case involving firearms." (Emphasis added.)

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Internal quotation marks omitted.) *State* v. *Figueroa*, 235 Conn. 145, 169, 665 A.2d 63 (1995). Accordingly, a charge "must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven." (Internal quotation marks omitted.) Id. *State* v. *Marra*, 222 Conn. 506, 538, 610 A.2d 1113 (1992).

"To determine whether the court's instructions were improper, we review the entire charge to determine if, 'taken as a whole, the charge adequately guided the jury to a correct verdict.' " *State* v. *Figueroa*, supra, 235 Conn. 170. "The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) Id.; see also *State* v. *Pollitt*, 205 Conn. 132, 155–56, 531 A.2d 125 (1987).

The trial court referred to the facts to instruct the jurors on the proper application of the facts that they found proven to the law in the case. Read in its entirety, the court's charge was explanatory and not directive. The court's repeated admonishments to the jury "if you accept the evidence," "if you believe the witness" and "if you find the evidence credible" establish that the court carefully separated its function, as instructor in the law, from the function of the jury, the fact finder.

Further, the trial court in its instructions expressly stated to the jury: "If the court has expressed or intimated any opinion as to the facts, you are not bound by that opinion." The trial court properly commented on the evidence in illustrating the proper application of the law. The court instructed the jurors that they were the ultimate judges of the facts and they were to rely on their own recollections of the facts where they differed from the court's recollection. See *State* v. *Caballero*, 49 Conn. App. 486, 494, 714 A.2d 1254, cert. denied, 247 Conn. 924, 719 A.2d 1170 (1998). Nothing in the record supports the defendant's assertion that the trial court's charge was unfair and that it favored the state over the defendant.

In sum, the trial court's instructions to the jury on combat by agreement was proper, and the trial court did not improperly marshal the evidence that the defendant and the victim agreed to engage in combat. The trial court clearly charged fairly, accurately and in accordance with applicable law.

The judgment is affirmed.

In this opinion the other judges concurred.