VANCE JOHNSON *v.* COMMISSIONER OF
CORRECTION
(SC 17997)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 14—officially released July 22, 2008

*Joseph A. Jaumann*, special public defender, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom were *Madeline A. Melchionne*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

### Opinion

VERTEFEUILLE, J. The petitioner, Vance Johnson, appeals[1] from the judgment of the habeas court denying his second petition for a writ of habeas corpus. In this appeal, the petitioner claims that the habeas court improperly rejected his claims that: (1) the retroactive application by the respondent, the commissioner of correction, of this court's decision in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 175 (2004), to change the petitioner's presentence confinement credit constituted a violation of the ex post facto clause of the United States constitution; and (2) at both the petitioner's criminal trial and his first habeas trial, his attorneys rendered ineffective assistance of counsel.[2] We affirm the judgment of the habeas court.

---

[1] The petitioner appealed from the judgment of the Superior Court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The petitioner also claims that the state's recalculation of his presentence confinement credits in response to this court's decision in *Harris* was a "factual and legal impossibility . . . ." We decline to review this claim, however, because it is inadequately briefed, as the petitioner's argument on this issue relies only generally on *Harris* and is devoid of any analysis. See *State* v. *Clark*, 255 Conn. 268, 281 n.30, 764 A.2d 1251 (2001) ("[c]laims on appeal that are inadequately briefed are deemed abandoned" [internal quotation marks omitted]).

The record reveals the following relevant undisputed facts and procedural history. The petitioner was arrested and charged with murder in violation of General Statutes § 53a-54a and criminal possession of a firearm in violation of General Statutes § 53a-217. The petitioner was held in pretrial custody on these charges for a total of 819 days, until December 9, 1996, when he pleaded guilty to criminal possession of a firearm. He was sentenced on January 17, 1997, to five years incarceration on that charge. After sentencing, the respondent credited the petitioner with 819 days presentence confinement credit against the five year sentence.

Thereafter, following a trial to a jury, the petitioner was convicted of murder, and on March 14, 1997, was sentenced to sixty years incarceration, to run concurrently with the sentence on the weapons charge. That conviction subsequently was affirmed by the Appellate Court. See *State* v. *Johnson*, 53 Conn. App. 476, 477, 733 A.2d 852, cert. denied, 249 Conn. 929, 733 A.2d 849 (1999). Following the petitioner's murder conviction, the respondent moved the petitioner's presentence confinement credit from the sentence for the weapons charge, where the respondent originally had applied it, and posted the credit to the petitioner's longer sentence for murder. In May, 2005, after we had decided *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 820, wherein we interpreted our statutes regarding the application of presentence confinement credit and determined, inter alia, that once a credit is applied to one sentence, it cannot be applied to a subsequent sentence, the respondent reapplied the petitioner's credit to the weapons charge. As a result, the petitioner's maximum release date from incarceration was changed from July 5, 2052, to December 12, 2054.

In 2001, the petitioner filed his first petition for a writ of habeas corpus, alleging that his trial counsel had

rendered ineffective assistance of counsel at the petitioner's murder trial in several respects. After trial, the first habeas court denied the petition for a writ of habeas corpus as well as a subsequent petition for certification to appeal. The Appellate Court dismissed the petitioner's subsequent appeal from the court's denial of certification to appeal, and this court denied certification to appeal from the Appellate Court's decision. *Johnson* v. *Commissioner of Correction*, 76 Conn. App. 901, 819 A.2d 940, cert. denied, 264 Conn. 904, 823 A.2d 1221 (2003).

Thereafter, in 2005, the petitioner filed his second petition for a writ of habeas corpus, claiming again that his trial counsel at the murder trial had rendered ineffective assistance of counsel, but this time claiming that he had failed to perform adequately in different respects than he had claimed in the first petition. The petitioner further alleged in this second habeas petition that counsel at his first habeas proceeding also had rendered ineffective assistance on his behalf by, inter alia, failing to secure certain witness testimony at the first habeas proceeding, to present certain relevant evidence at that proceeding, and to prepare adequately an argument on the petitioner's behalf. The petitioner also asserted that the respondent's method of recalculating the petitioner's presentence confinement credit violated his constitutional rights to due process and equal protection.

After trial, the habeas court concluded with respect to his claim of ineffective assistance in the first habeas trial that the petitioner had failed to meet his burden of proof pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), because he had not demonstrated deficient performance and, further, because his counsel's failure to call a particular witness to testify in his first habeas proceeding did not prejudice the petitioner. With respect to the petitioner's

claim that his trial counsel had rendered ineffective assistance at the murder trial, the second habeas court found that this claim was barred by the doctrine of res judicata because the petitioner had litigated the effectiveness of his trial counsel's performance in his first habeas proceeding. Finally, the court in the second habeas proceeding rejected the petitioner's argument that the respondent's method of recalculating the presentence confinement credit had violated the petitioner's right to due process and equal protection. The second habeas court rendered judgment dismissing the petition for habeas corpus and thereafter granted certification to appeal.[3] This appeal followed.

I

The petitioner first claims that the respondent's retroactive application of this court's decision in *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 808, violated the ex post facto clause of the United States constitution because it retroactively deprived him of the benefit of credit for 819 days of presentence confinement to which he was entitled, with the result that his maximum release date was extended approximately eighteen months. Because the petitioner's ex post facto claim was not properly raised and decided in the petitioner's second habeas proceeding, however, we decline to review it.[4]

---

[3] The transcript of the second habeas trial reveals that the second habeas court orally indicated that it "would be willing to sign" a petition for certification to appeal only with respect to the narrow issue of whether the respondent properly could apply the petitioner's accrued presentence confinement credit to an expired sentence. When the habeas court granted certification to appeal, however, it did not impose any limitation on the scope of the petitioner's appeal.

[4] We note further that the petitioner did not frame properly his challenge to the retroactive application of *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 808, to his sentence. Because he challenges the retroactive application of a *judicial decision* and not an act of the legislature, his claim is not properly one that the ex post facto clause has been violated. The ex post facto clause is limited to actions by the legislative branch. *Rogers* v. *Tennessee*, 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). We

Our appellate review is limited to matters in the record, and "we will not address issues not decided by the trial court. . . . *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by court below are not properly before appellate tribunal) . . . . It is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . ." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52–53, 717 A.2d 77 (1998).

The record in the present case reveals that, in his second amended habeas petition, the petitioner claimed that the respondent's reapplication of the petitioner's presentence confinement credit following this court's decision in *Harris* violated the due process and equal protection clauses of the federal constitution. After a hearing, the habeas court rejected these claims. On appeal in this court, the petitioner now claims that the reapplication violated the ex post facto clause of the federal constitution. The petitioner did not allege this specific constitutional violation in his amended habeas petition, however, and the habeas court therefore never decided the ex post facto claim. Moreover, although he had raised this claim in a brief filed in the habeas court, the petitioner failed to move for an articulation by the

acknowledge, however, that in *Bouie* v. *Columbia*, 378 U.S. 347, 353–54, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), the United States Supreme Court concluded that a judicial construction of a criminal statute that operates like an ex post facto law may violate due process. We recently rejected, however, a claim similar to that raised by the petitioner here in *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 950 A.2d 1220 (2008). We concluded in that case that the respondent's retroactive application of *Harris*, and two related cases, did not constitute a due process violation. Id., 803–804.

trial court with regard to the ex post facto claim. Under these circumstances, we decline to review the petitioner's ex post facto claim because it is not properly before this court. See *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 589 n.9, 830 A.2d 164 (2003) (noting that "because our review is limited to matters in the record, we will not address issues not decided by the trial court" [internal quotation marks omitted]).

"Nevertheless, a defendant may prevail on an unpreserved [constitutional] claim under [review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)][5] or the plain error doctrine. See Practice Book § 60-5; *State* v. *Kelly*, 256 Conn. 23, 58 n.18, 770 A.2d 908 (2001) . . . . A party is obligated, however, affirmatively to request review under these doctrines. *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997) (defendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*)." (Citation omitted; internal quotation marks omitted.) *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). In the present case, the petitioner failed to request that we undertake such review. We thus decline to review the petitioner's ex post facto claim. See *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000) (observing that "[i]t is not appropriate to engage in a level of review that is not requested" [internal quotation marks omitted]).

[5] Under *State* v. *Golding*, supra, 213 Conn. 239-40, "a [party] can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate the harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail."

## II

The petitioner next claims that the second habeas court improperly rejected his claim that various attorneys who had represented him in different prior legal proceedings had rendered ineffective assistance of counsel. We consider first the habeas court's ruling with regard to the petitioner's claim that counsel in his first habeas proceeding had rendered ineffective assistance. Thereafter, we consider the habeas court's ruling with regard to the petitioner's claim that counsel at his murder trial rendered ineffective assistance.

### A

The petitioner first contends that the second habeas court improperly rejected his claim that counsel in his first habeas proceeding had rendered ineffective assistance of counsel by failing to allege that the petitioner's counsel at his murder trial rendered ineffective assistance of counsel by failing to secure an expert witness in ballistics to testify on the petitioner's behalf. The respondent asserts that such testimony would not have impacted the petitioner's case materially, and that the ineffective assistance claim thus must fail under the prejudice prong of the *Strickland* test. We agree with the respondent.

The petitioner was convicted of murder for shooting a friend, Christopher Gills, on Homestead Avenue in Hartford. At trial, the petitioner admitted that he had shot Gills, but contended that he had been acting in self-defense. *State* v. *Johnson,* supra, 53 Conn. App. 479. Witnesses at the murder trial testified that a few hours after the Homestead Avenue shooting, the petitioner drove up to property located at 328 Cornwall Street in Hartford, and, after displaying a gun and taunting a group of individuals gathered on the property, fired a number of shots as he drove by the group. Id.,

477–79. The petitioner denied having committed the second shooting.

During the second habeas trial, Achilles Rethis, an officer with the Hartford police department who had arrived at the scene of the Cornwall Street shooting, testified that no spent shell casings were recovered at the scene. Spent shell casings were recovered, however, from the scene of the Homestead Avenue shooting.

The second habeas court rejected the petitioner's claim that counsel in his first habeas proceeding had rendered ineffective assistance of counsel by failing to allege that trial counsel during the murder trial failed to obtain a ballistics expert to testify. Specifically, the second habeas court ruled that counsel in the petitioner's first habeas proceeding had not performed deficiently, and that his trial attorney's failure to call a ballistics witness to testify had not prejudiced the petitioner.

We first set forth the appropriate standard of review. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [supra, 466 U.S. 698]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 6.

We next set forth the familiar two part test for ineffective assistance of counsel enunciated by the United States Supreme Court in *Strickland* v. *Washington*, supra, 466 U.S. 668. "In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court

determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. [Id.], 688, 694. The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment." (Emphasis in original; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575–76, 941 A.2d 248 (2008).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." (Internal quotation marks omitted.) Id., 577. Additionally, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . [Moreover], a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." (Internal quotation marks omitted.) Id., 577–78.

In the present case, the petitioner claims that the second habeas court improperly rejected his claim that his first habeas counsel had rendered ineffective assistance of counsel by failing to allege that the petitioner's trial counsel was ineffective for failing to retain a ballistics expert to testify. Specifically, the petitioner contends that a ballistics expert could have tested the shell casings that were recovered[6] and "could have criticized reports that more [than] 100 shots were fired on Cornwall Street based on the fact that no shell casings were found on Cornwall Street." The petitioner asserts, in turn, that his first habeas counsel rendered ineffective assistance by failing to raise this issue as to the ineffectiveness of the petitioner's trial counsel.

We note that in the context of a claim for ineffective assistance of counsel, "[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." *State* v. *Talton*, 197 Conn. 280, 297, 497 A.2d 35 (1985). In the present case, we agree with the second habeas court that the testimony of a ballistics expert would not have aided the petitioner's case at trial because the only shell casings that had been recovered were those from the site of the Homestead Avenue shooting, which the petitioner admitted committing, although he alleged that he had acted in self-defense. A ballistics expert would not have been helpful in establishing the petitioner's claim of self-defense. In addition, although a ballistics expert might have testified regarding the apparent incongruity between reports that more than 100 gunshots had been fired on Cornwall Street and the fact that no shell casings had been recov-

---

[6] In his brief before this court, the petitioner does not specify to which shell casings he refers in making this claim. We note, however, that shell casings were recovered from the site of the Homestead Avenue shooting, and not from the site of the Cornwall Street shooting.

ered there, testimony at the second habeas proceeding revealed that the lack of shell casings was not unusual in these circumstances. Specifically, Rethis, who testified at the second habeas trial, provided a number of reasons why an investigation following the report of shots having been fired might have recovered no shell casings.[7] We therefore agree with the second habeas court that the testimony of a ballistics expert would not have altered the outcome of the murder trial or assisted the petitioner in establishing self-defense. Accordingly, we conclude that the second habeas court properly concluded that the petitioner's first habeas counsel did not render ineffective assistance by failing to raise the issue of trial counsel's failure to present the testimony of a ballistics expert.[8]

### B

We next consider the petitioner's claim that the second habeas court improperly concluded that his claim that his trial counsel in his murder trial had provided ineffective assistance of counsel was barred by the doctrine of res judicata. The petitioner asserted in the habeas court that his trial counsel had rendered ineffective assistance of counsel because he failed to secure the testimony of the following individuals at the petitioner's murder trial: (1) a ballistics expert; and (2) Officer Rethis to contradict the testimony of a particular witness who had implicated the petitioner in the murder. Although the petitioner litigated the issue of his trial counsel's effectiveness in his first habeas proceed-

[7] Rethis testified that the gunshots could have been fired from inside a vehicle, or that the gun used in the shooting did not eject any shell casings.

[8] Because we conclude that the petitioner did not establish that counsel's performance prejudiced the petitioner, we need not analyze the petitioner's claim under the performance prong of *Strickland*. See *Strickland* v. *Washington*, supra, 466 U.S. 687 (requiring petitioner to satisfy both performance and prejudice prongs to prevail on claim of ineffective assistance of counsel).

ing,[9] he raised different specifications of this same claim of ineffectiveness in the second habeas court. See *Johnson* v. *Warden*, Superior Court, judicial district of Danbury, Docket No. CV-99-0336854-S (January 15, 2002). Because the petitioner asserted a claim that previously had been adjudicated fully on its merits, we agree with the second habeas court that this claim was barred by the doctrine of res judicata.

"The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made." (Internal quotation marks omitted.) *Dunham* v. *Dunham*, 221 Conn. 384, 391–92, 604 A.2d 347 (1992); see *Orselet* v. *DeMatteo*, 206 Conn. 542, 550, 539 A.2d 95 (1988) (noting that "[t]he purpose of a lawsuit

---

[9] In his first habeas proceeding, the petitioner filed a four count revised amended petition in which he alleged that his trial counsel had rendered ineffective assistance of counsel in several respects. As set forth by the first habeas court, the four counts the petitioner alleged in his complaint were as follows: (1) counsel inadequately investigated the state's factual allegations and "failed to preserve a 911 tape related to misconduct evidence [that] was admitted at the criminal trial"; (2) "counsel was 'distracted' by the participation of a second defense lawyer . . . during the jury selection process"; (3) "counsel improperly permitted a particular juror to be dismissed in spite of the petitioner's wishes to the contrary"; and (4) "counsel failed to withdraw from the case even though the petitioner filed grievances against him, failed to present relevant evidence on the petitioner's behalf and erroneously advised the petitioner that he was required to take the witness stand in order to get the presiding judge to instruct the jury on the issue of self-defense." *Johnson* v. *Warden*, Superior Court, judicial district of Danbury, Docket No. CV-99-0336854-S (January 15, 2002). The habeas judge denied the petition for a writ of habeas corpus in a memorandum of decision that methodically rejected each of the four counts of the petitioner's complaint. As to the fourth count, the habeas court inferred that the petitioner implicitly had alleged a claim of conflict of interest. The court rejected this portion of the petitioner's habeas petition on that basis alone. As we have noted previously, the petitioner appealed this matter to the Appellate Court, which dismissed the appeal; see *Johnson* v. *Commissioner of Correction*, supra, 76 Conn. App. 901; and this court subsequently denied certification to appeal. See *Johnson* v. *Commissioner of Correction*, supra, 264 Conn. 904.

is not only to do substantial justice but to bring an end to controversy" [internal quotation marks omitted]). "The doctrine . . . applies to criminal as well as civil proceedings and to state habeas corpus proceedings." *State* v. *Miranda*, 274 Conn. 727, 773, 878 A.2d 1118 (2005); see *McCarthy* v. *Warden*, 213 Conn. 289, 294–98, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990). However, "[u]nique policy considerations must be taken into account in applying the doctrine of res judicata to a constitutional claim raised by a habeas petitioner." (Internal quotation marks omitted.) *State* v. *Miranda*, supra, 773. Specifically, in the habeas context, in the interest of ensuring "that no one is deprived of liberty in violation of his or her constitutional rights . . . the application of the doctrine of res judicata . . . [is limited] to claims that actually have been raised and litigated in an earlier proceeding." (Internal quotation marks omitted.) Id.

Turning to the present case, we conclude that the second habeas court properly concluded that the judgment rendered by the first habeas court constituted a judgment on the merits on the issue of ineffective assistance of counsel at the petitioner's murder trial. We conclude, further, that the second habeas court properly found that the petitioner had an opportunity to litigate fully the effectiveness of his trial counsel in his first habeas proceeding. See *Brown* v. *Commissioner of Correction*, 44 Conn. App. 746, 751–52, 692 A.2d 1285 (1997) (rejecting petitioner's claim of ineffective assistance of counsel as barred under doctrine of res judicata where petitioner, after having fully litigated effectiveness of counsel in petition for new trial, made additional ineffective assistance claim as to same attorney before habeas court but cited different factual grounds in support thereof); see also *Asherman* v. *State*, 202 Conn. 429, 443, 521 A.2d 578 (1987) (concluding that defendant's claim of juror misconduct was barred

by res judicata because claim was "virtually identical in substance" to claim previously raised and decided); *State* v. *Aillon*, 189 Conn. 416, 423, 456 A.2d 279 (noting that judgment is final not only as to every matter that was actually presented to sustain claim, but also as to any other admissible matter that could have been offered for that purpose), cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983). Thus, we conclude that the second habeas court properly declined to review the petitioner's claim because it was barred by the doctrine of res judicata.

The judgment is affirmed.

In this opinion NORCOTT and ZARELLA, Js., concurred.

PALMER, J., with whom KATZ, J., joins, concurring. I agree with the result that the majority reaches. I disagree, however, with the majority's decision not to resolve the petitioner's unpreserved ex post facto claim on the ground that the petitioner did not expressly invoke *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See part I of the majority opinion. Although the petitioner should have acknowledged that his ex post facto claim was unpreserved and that he was seeking review under *Golding*, the state never objected on the ground that the petitioner had failed to invoke *Golding*; indeed, the state addressed the petitioner's ex post facto claim on its merits. There is no dispute, moreover, that the petitioner's claim fully satisfies the requirements for *Golding* review. Furthermore, the arguments and analysis that the petitioner raised in support of his ex post facto claim are precisely the same arguments and analysis that he would have raised if he had invoked *Golding*. Finally, as the majority acknowledges; see footnote 4 of the majority opinion; the merits of the petitioner's claim are foreclosed by

our recent opinion in *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 950 A.2d 1220 (2008). Under the circumstances, therefore, I see no reason why we should not consider the merits of the petitioner's ex post facto claim. I would do so and reject them for the reasons set forth in *Washington*. I therefore concur in the result.