**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Raymond LARA, Defendant–Appellant.**

No. 05CA2281.

Colorado Court of Appeals, Div. III.

Aug. 6, 2009.

Rehearing Denied Sept. 24, 2009.

John W. Suthers, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Appellate courts often say that jury instructions should "track the language" of the governing statute. *See, e.g., People v. Weinreich,* 119 P.3d 1073, 1076 (Colo.2005). But this statement, like many legal maxims, is true only up to a point. Sometimes, it is wrong to use statutory language in jury instructions. *See, e.g., Leonard v. People,* 149 Colo. 360, 374, 369 P.2d 54, 62 (1962).

Here, the court gave a jury instruction that tracked the language of section 18–1–704(4), C.R.S.2008. Because this language violated the defendant's right to due process, we reverse his murder conviction and remand for a new trial.

## I. Background

Raymond Lara was convicted of first degree murder for killing a rival gang member in a drive-by shooting.

The shooting was the result of an ongoing conflict between Lara's gang, the Norteños, and their rivals, the Sureños. On the day of the shooting, the two gangs met each other and exchanged insults. Later, the Norteños got into two cars and drove by the home of a Sureño. The victim and two others were standing outside. According to some witnesses, the victim pointed a shotgun at the first car of Norteños. Lara, in the second car, then shot the victim.

At trial, Lara defended against charges of first and second degree murder on the theory that he had acted to protect those in the first car. At the close of evidence, he tendered jury instructions on self-defense and defense of others. The trial court rejected Lara's instructions and instead gave an instruction that tracked the language of section 18–1–704(4). After receiving the court's instructions, the jury convicted Lara of first degree "extreme indifference" murder under section 18–3–102(1)(d), C.R.S.2008.

## II. Discussion

Lara contends that his conviction must be reversed for many reasons. We conclude that a new trial is required.

We begin by examining defenses generally and then focus on defense of a person under section 18–1–704. We examine the way that this defense relates to a charge of extreme indifference murder and discuss the prosecution's burden of proof in that context. We then identify the court's error and conclude that the error requires reversal. Finally, we offer a model instruction and address other issues to assist the court and the parties on retrial.

### A. Defenses Generally

■ There are two basic types of defenses: those that negate an element of the offense, and those in the nature of confession and avoidance. *See People v. Mullins*, 209 P.3d 1147, 1148 (Colo.App.2008) (distinguishing between defenses that "negate an element of the crime charged" and defenses that "seek to justify, excuse, or mitigate the commission of the offense").

■ Courts sometimes call the first type of defense a "denial" or "traverse," and they generally call the second type an "affirmative defense." *See People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo.1989) (noting the long-held distinction between affirmative defenses and defenses in the nature of a traverse). The labels are not particularly helpful, in part because the legislature does not use them as the courts do.[1] But it is helpful to note the difference between the types of defenses and to see how this difference is reflected in jury instructions:

1. If the defense is a denial or traverse, the jury need only decide whether the prosecution has proved the elements of the charged offense beyond a reasonable doubt. To make this decision, the jury must understand the relationship between the defense and the substantive element that the defense would negate. If this relationship is apparent, the court need not give a separate instruction defining the defense. *See People v. Bush*, 948 P.2d 16, 18 (Colo. App.1997) (court was not required to give an instruction defining the defense of consent). Instead, the court may give a theory-of-the-case instruction that embodies the defense. *See People v. Nunez*, 841 P.2d 261, 266 (Colo.1992) (trial court committed reversible error by refusing to give a theory-of-the-case instruction embodying the defense of alibi).

2. If the defense is in the nature of confession and avoidance, the court must give both an instruction defining the elements of the charged offense and a separate instruction setting forth the *additional* issues raised by the de-

---

1. The legislature has used the term "affirmative defense" to describe defenses of both types. *Compare* § 18–1–505(1), (4), C.R.S.2008 (consent of the victim is an affirmative defense if it ne-

gates an element of the offense), *with* §§ 18–1–708 to –710, C.R.S.2008 (duress and entrapment are affirmative defenses).

fense. *See Huckleberry,* 768 P.2d at 1238.

■ In some jurisdictions, the accused bears the burden of proving defenses that are in the nature of confession and avoidance. *See, e.g., Dixon v. United States,* 548 U.S. 1, 8, 16, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006) (in a prosecution for federal firearms offenses, the defendant bears the burden of proving duress by a preponderance of the evidence; this burden comports with due process and a "long-established common-law rule"). But in Colorado, the prosecution always bears the burden of proof, regardless of the type of defense. *See* § 18–1–402, C.R.S. 2008 ("No person shall be convicted of any offense unless his guilt thereof is proved beyond a reasonable doubt."); § 18–1–407(2), C.R.S.2008 ("If the issue involved in an affirmative defense is raised, then the guilt of the defendant must be established beyond a reasonable doubt as to that issue as well as all other elements of the offense."); *People ex rel. Juhan v. Dist. Court,* 165 Colo. 253, 260, 439 P.2d 741, 745 (1968) (under the state constitution, "the accused cannot be required by legislative enactment to prove insanity or any other defense by a preponderance of the evidence").

### B. Defense of a Person

Section 18–1–704 sets forth the law governing the "[u]se of physical force in defense of a person." The statute comprises both self-defense and defense of others. § 18–1–704(1), C.R.S.2008.[2]

■ Although the legislature has characterized defense of a person as an "affirmative defense," *see* § 18–1–710, the nature of the defense depends on the charge against which it is raised. When asserted against charges that require proof of intent, the defense is generally in the nature of confession and avoidance. *See, e.g., People v. Gholston,* 164 Colo. 58, 60, 432 P.2d 636, 637 (1967). But when asserted against charges that require proof of recklessness or criminal negligence, the defense is an element-negating denial or traverse. *See Mullins,* 209 P.3d at 1149

(citing *People v. Fink,* 194 Colo. 516, 518, 574 P.2d 81, 83 (1978)).

How should the jury be instructed when defense of a person is raised as an element-negating defense? The answer to this question has changed over time.

Years ago, our courts thought it unnecessary to define defense of a person or explain its relationship to the charged offense. *See Case v. People,* 774 P.2d 866, 869–70 (Colo. 1989) (in a prosecution for reckless manslaughter and criminally negligent homicide, the trial court properly refused to instruct the jury on the law of self-defense); *Fink,* 194 Colo. at 518, 574 P.2d at 83 (same); *People v. Fernandez,* 883 P.2d 491, 493 (Colo. App.1994) (in a prosecution for extreme indifference murder, the trial court properly declined to instruct on the law of self-defense).

But in 2003, the legislature changed the governing statute. Now, when defense of a person is raised as an element-negating defense, the trial court must define the defense and explain how it relates to the pertinent elements of the charged offense:

> In a case in which the defendant is not entitled to a jury instruction regarding self-defense as an affirmative defense, the court shall allow the defendant to present evidence, when relevant, that he or she was acting in self-defense. If the defendant presents evidence of self-defense, the court shall instruct the jury with a self-defense law instruction. The court shall instruct the jury that it may consider the evidence of self-defense in determining whether the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner. However, the self-defense law instruction shall not be an affirmative defense instruction and the prosecuting attorney shall not have the burden of disproving self-defense. This section shall not apply to strict liability crimes.

§ 18–1–704(4); *see People v. Bachofer,* 192 P.3d 454, 463 (Colo.App.2008) ("The trial court should instruct the jury that, in deter-

---

**2.** The trial court ruled that defense of others constitutes "self-defense" within the meaning of section 18–1–704(4). The parties have not chal-

lenged this ruling, and we assume that it is correct.

mining whether the defendant acted recklessly, it must consider whether the defendant reasonably believed it necessary for him to defend himself or another person from the victim's use or imminent use of unlawful physical force." (citing *People v. Roberts*, 983 P.2d 11, 14 (Colo.App.1998)) ).

## C. Prosecution's Burden

■ Lara's argument centers on a clause that appears in the second-to-last sentence of section 18–1–704(4): "the prosecuting attorney shall not have the burden of disproving self-defense." Lara contends that this clause is unconstitutional because it places the burden of proof on criminal defendants. And he contends that, by including this language in the jury instructions, the trial court committed constitutional error.

We decline to address the first part of Lara's argument because he did not challenge the constitutionality of the statute during trial. *See People v. Mershon*, 874 P.2d 1025, 1035 n. 13 (Colo.1994) (declining to address unpreserved challenges to the constitutionality of a statute); *People v. Felgar*, 58 P.3d 1122, 1126 (Colo.App.2002) (same). We therefore do not consider whether the statutory language can be interpreted to comply with the requirements of the federal and state constitutions.

■ But we will address the second part of Lara's argument.[3] And we agree with his view.

■ It is axiomatic that the prosecution must prove all the elements of an offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *People v. West*, 724 P.2d 623, 626 (Colo.1986). It necessarily follows that the prosecution must also "disprove beyond a reasonable doubt any defenses that negate an element of the charged offense."

*United States v. Dodd*, 225 F.3d 340, 344 (3d Cir.2000) (citing *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)); *see United States v. Diaz*, 285 F.3d 92, 97 n. 5 (1st Cir.2002); *United States v. Solorzano–Rivera*, 368 F.3d 1073, 1079 (9th Cir.2004); *State v. Hage*, 595 N.W.2d 200, 205 (Minn.1999).

■ The People do not object, in principle, to the burden of disproving all element-negating defenses beyond a reasonable doubt. Instead, they contend that the burden does not exist when defense of others is raised against a charge of extreme indifference murder. In that context, say the People, defense of others is a mere circumstance for the jury to consider, and not an element-negating defense. We reject this argument.

■■ We recognize that some so-called "defenses" are merely circumstances that the jury may consider in deciding whether the defendant is guilty of the charged offense.[4] But defense of a person is not one of these. *See Commonwealth v. Costello*, 392 Mass. 393, 467 N.E.2d 811, 819 (1984) (distinguishing intoxication, which is not a defense, from element-negating defenses "such as self-defense" that must be disproved beyond a reasonable doubt).

■ Extreme indifference murder differs from second degree murder in that it requires that the defendant cause death "[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally." § 18–3–102(1)(d). This additional element is not part of the culpable mental state but is an objective measure of the defendant's conduct. *See Candelaria v. People*, 148 P.3d 178, 181, 182 (Colo.2006) (statutory amendments did not "carve out a new or intermediate culpable mental state," but rather require

---

**3.** Lara preserved this contention by asking the court to give jury instructions which expressly stated that the defendant did *not* bear the burden of proving self-defense or defense of others. *See Cassels v. People*, 92 P.3d 951, 956 (Colo.2004); *People v. Pahl*, 169 P.3d 169, 183 (Colo.App. 2006).

**4.** Voluntary intoxication is one such circumstance. The jury may consider evidence of vol-

untary intoxication for the purpose of deciding whether the defendant formed specific intent. § 18–1–804(1), C.R.S.2008. But voluntary intoxication is not a true element-negating defense because it is possible for an intoxicated person to form specific intent. *See People v. Harlan*, 8 P.3d 448, 470–71 (Colo.2000) (characterizing section 18–1–804(1) as an "evidentiary rule").

proof that the "actual killing act ... objectively demonstrat[es] a willingness to take life indiscriminately").

The element of universal malice is negated—that is, necessarily displaced—by conduct that constitutes defense of a person under section 18–1–704. If an individual reasonably believes that he or another person is about to suffer unlawful physical force, and if he responds with the degree of force that he reasonably believes necessary under the circumstances, he is not acting under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally. The two types of conduct are mutually exclusive.

█ Thus, from the governing constitutional and statutory law, we derive this principle: to prove the elements of extreme indifference murder, the prosecution must disprove that the defendant acted in reasonable defense of a person, when that defense is asserted at trial and supported by some credible evidence.

### D. Reversible Error

Unfortunately, in drafting section 18–1–704(4), the legislature used language that appears to contradict this principle. And though we do not pass judgment on the statute itself, we conclude that courts should refrain from including this statutory language in jury instructions. It is constitutional error to tell jurors that the prosecution "shall not have the burden of disproving self-defense [or defense of others]."

But that is what the trial court did when it instructed the jurors here:

> Self-defense or defense of others is not an affirmative defense to the crimes of Murder in the First Degree, Manslaughter, or Criminally Negligent Homicide. You may consider evidence of self-defense or defense of others in determining whether the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner.
>
> However, the prosecution does not have the burden of disproving self-defense or defense of others regarding Murder in the First Degree (Extreme Indiffer-

ence), Manslaughter, or Criminally Negligent Homicide.

This instruction violated Lara's right to due process because it affirmatively misled the jury about the burden of proof. *See People v. Garcia,* 113 P.3d 775, 784 (Colo. 2005) ("[A] defendant's constitutional right to due process is violated by an improper lessening of the prosecution's burden of proof."); *People v. Janes,* 982 P.2d 300, 304 (Colo. 1999) (reversing because the instructions confused or misled the jury about the burden of proof on the "make-my-day" defense).

█ We conclude that the error was not harmless beyond a reasonable doubt. *See Griego v. People,* 19 P.3d 1, 8–9 (Colo.2001) (appellate courts review for constitutional harmless error when a court incorrectly instructs the jury about an element of the offense). On the evidence presented, a jury could have found that Lara acted in reasonable defense of others. By altering the burden of proof on that critical issue, the instruction undermined the reliability of the jury's finding on the element of universal malice and thus undermines our confidence in the reliability of the verdict.

We therefore reverse Lara's conviction and remand the case for a new trial.

### E. Instruction on Retrial

Assuming that the case will involve similar evidence on retrial, we suggest that the court give this instruction on defense of others as an element-negating defense:

> As noted in Instruction ____ [defining extreme indifference murder], a person may be convicted of extreme indifference murder only if he or she acted "under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally."
>
> A person does not act "under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally" if he or she acts in reasonable defense of others.

The evidence in this case raises the issue of defense of others. Therefore, in deciding whether the defendant acted "under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally," you must decide whether the defendant was acting in reasonable defense of others, as that defense is defined in Instruction ____ [defining defense of others].

The prosecution must prove beyond a reasonable doubt that the defendant acted "under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally." To do that, the prosecution must prove, among other things, that the defendant did not act in reasonable defense of others. If you conclude, after considering all the evidence, that the prosecution has failed to prove these matters beyond a reasonable doubt, you must find the defendant NOT GUILTY of extreme indifference murder.

 This instruction differs from the trial court's instruction in three ways: (1) it explains the relationship between defense of others and the substantive element that the defense would negate[5]; (2) it avoids the term "affirmative defense" because that label is not helpful to the jury and may cause confusion; and (3) it accurately states the prosecution's burden of proof.

### F. Remaining Contentions

 We briefly address Lara's remaining contentions to assist the court and the parties on retrial.

1. *Suppression of Statements.* The court correctly refused to suppress statements that Lara made during an interview with two police officers. The evidence supports the court's findings of historical fact, and those findings in turn support the conclusion that Lara's statements were voluntary and were made in a noncustodial setting. *See People v. Matheny,* 46 P.3d 453, 462–68 (Colo.2002).

2. *Prior Conviction.* The court did not abuse its discretion in admitting evidence of Lara's prior conviction for illegal discharge of a firearm. The underlying events were logically relevant to show Lara's motive in firing at the Sureños and thus were probative of his intent and theory of defense. For those purposes, the evidence was relevant apart from any inference that Lara acted in conformity with his bad character. And the incremental probative value of the evidence was not outweighed by the danger of unfair prejudice, especially because the court gave a limiting instruction. *See* CRE 404(b); *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990); *People v. Vialpando,* 954 P.2d 617, 623 (Colo.App.1997).

3. *Ordinary Physical Force.* For the reasons explained in *People v. Vasquez,* 148 P.3d 326, 328–30 (Colo.App. 2006), Lara was entitled to have the jury instructed on the use of ordinary force in defense of others. There was some evidence that Lara did not intend to use his gun to produce death.

4. *Initial Aggressor.* For the reasons explained in *People v. Manzanares,* 942 P.2d 1235, 1241 (Colo.App.1996), the court should not have instructed the jury on the initial aggressor exception to defense of a person. Although Lara and his gang exchanged insults with the Sureños, their conduct did not constitute physical aggression. *See People v. Griffin,* 224 P.3d 292, 300, 2009 WL 1013008 (Colo.App. No. 06CA0784, Apr. 16, 2009) (initial aggressor instruction is warranted "if the evidence

---

5. The court should explain the relationship between defense of a person and the substantive element of universal malice because that relationship not intuitively obvious, even to lawyers. But this sort of explanation is not required if a defense and a substantive element are related in an obvious way. *See, e.g., People v. Cruz,* 923

P.2d 311, 312 (Colo.App.1996) (court did not need to instruct on the defense of consent because the elemental instruction required proof that the defendant "caused submission ... through the actual application of physical force or violence").

will support a reasonable inference that the defendant initiated the physical conflict by using or threatening the imminent use of unlawful physical force").

5. *No Duty to Retreat.* For the reasons set forth in *Cassels,* 92 P.3d at 956, the court should have instructed the jury on the doctrine of "no duty to retreat."

6. *Combat by Agreement and Provocation.* The court correctly instructed the jury on the doctrines of combat by agreement and provocation. On the evidence presented, a jury could reasonably have found that Lara agreed to fight, not only with fists, but also with guns. *See State v. Johnson,* [53 Conn.App. 476,] 733 A.2d 852, 855 (Conn.App.Ct.1999). Similarly, a jury could reasonably have found that Lara and his gang intended to provoke the victim to shoot at them. *See People v. Silva,* 987 P.2d 909, 914 (Colo.App. 1999).

### III. Conclusion

The judgment is reversed and the case is remanded for a new trial.

Judge CASEBOLT and Judge J. JONES concur.