The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Dominic Dale DURAN, Defendant–Appellant.

No. 06CA1850.

Colorado Court of Appeals, Div. II.

April 28, 2011.

Rehearing Denied July 21, 2011.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Samler & Whitson, P.C., Eric A. Samler, Hollis A. Whitson, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Dominic Dale Duran, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted first degree extreme indifference murder and reckless manslaughter. He does not appeal his conviction of being an accessory to a crime. We vacate the judgment of conviction for reckless manslaughter, reverse the judgment of conviction for attempted first degree extreme indifference murder, and remand for a new trial on the attempted murder charge.

## I. Background

A teenager (host) held a large party at his house while his parents were out of town. Defendant's group, which included codefendant Angelo Montoya, Gilbert Salazar, and four others, attended the party. Defendant

drove himself, Montoya, and two others to the party.

Following a confrontation at the party between Montoya and one of the host's friends, Montoya pulled a gun from his waistband and brandished it. The partygoers panicked and many of them, including Salazar and Montoya, ran outside.

At defendant's joint trial with Montoya, the prosecution presented evidence that Montoya's weapon held ten bullets, that Montoya shot five bullets at the house while running in the yard, and that either Montoya or defendant shot five bullets from Montoya's gun toward the house from defendant's car as they drove from the scene. Salazar pulled his gun and shot twice into the air while running in the yard in front of the house and five additional times into the air while in the street south of the house.

Testimony indicated that defendant was with the group at the party before the confrontation began and that he ran out of the house to his car after the confrontation, but the prosecution presented no other evidence of his actions from the commencement of the confrontation until he and Montoya reached his car. One witness testified that defendant was in the driver's seat of the car and told Montoya, "Let's go," after Montoya fired the first group of gunshots. The witness testified that Montoya then got in the car and the witness saw someone shooting from the passenger side of the car. Salazar, however, testified that Montoya later told him that Montoya was driving the car, and that defendant later admitted that he had fired the second group of gunshots at the house.

The prosecution presented evidence that the victim was seated on a couch in a bedroom at the front of the house when the host came into the bedroom and told her and her friends that someone had pulled a gun. As the victim was getting up from the couch, the first shots rang out, the host said, "Get down," and she and all the occupants of the bedroom went down on the floor. After the first group of shots was fired, the host got up and turned off the bedroom lights. The second group of gunshots ensued. The victim did not get up. She died from one gunshot to the head.

The prosecution's experts testified that the bullet wound was located fifty-five inches above the victim's heel and that a bullet hole in a window screen (the glass window was open at the time) in the bedroom was fifty-three inches from the floor of the house. All the testimony indicated that the victim was near the bedroom window during the shooting. Investigators testified at trial that they searched the bedroom and adjacent rooms in the home and found no other evidence, aside from the single hole in the window screen, of any bullet entering the bedroom or striking any surface inside the home.

Forensic evidence established that the bullet that killed the victim could not have come from Salazar's gun. The prosecution's experts testified that they could not determine the precise trajectory of the bullet that entered the bedroom through the window screen. No testimony, however, indicated that the bullet could have entered through the screen and hit the victim while she was down on the floor, nor was there any evidence from which that fact could reasonably be inferred.

The prosecution also presented evidence that after Montoya and Salazar pulled their guns and ran into the yard, one of the host's friends ran to his truck and pulled out a pellet gun that was similar in appearance to an assault rifle. By the time defendant and Montoya were in the car, the friend was holding the rifle, taking cover behind a tree in a position where he would have been visible to defendant and Montoya as they drove away from the house, and aiming the gun as if to shoot at defendant's car.

The grand jury had returned an indictment charging defendant and Montoya with first degree extreme indifference murder explicitly naming only the victim. After the prosecution's case-in-chief, defendant moved for judgment of acquittal, asserting that the prosecution had presented insufficient evidence to support a jury verdict finding him guilty of murdering the victim. The trial court denied the motion.

Following completion of the testimony, the trial court instructed the jury on first degree extreme indifference murder and, as a lesser

included offense, attempted extreme indifference murder. It also instructed the jury on reckless manslaughter and attempted reckless manslaughter, but listed those as lesser nonincluded offenses, and the instructions required the jury to consider those charges in addition to the murder charges. Defendant did not object to these instructions. The trial court also gave a general complicity instruction to the jury, which applied to all the homicide charges.

In addition, the trial court instructed the jury on self-defense. The instruction contained a description of circumstances under which a person is justified in using physical force and deadly physical force, including sections on provocation and initial aggressor. Montoya raised specific objections to the provocation and initial aggressor sections of the instruction. At the end of lengthy argument regarding the self-defense instruction, defendant objected generally to "the language of the entire instruction."

The jury returned guilty verdicts for attempted first degree murder, reckless manslaughter, and accessory to a crime. This appeal followed.

## II. Sufficiency of the Evidence

Defendant contends that there was insufficient evidence to support the jury's verdict finding him guilty of reckless manslaughter and attempted first degree extreme indifference murder. We conclude that the evidence was insufficient to support the reckless manslaughter verdict, but was sufficient to support attempted first degree extreme indifference murder.

### A. Standard of Review

We review de novo whether the evidence before the jury was sufficient to sustain defendant's conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo.2010).

When reviewing a claim of insufficient evidence, we must determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). In making this determination, we must give the prosecution the benefit of every reasonable inference arising from the evidence.

■ The determination of the credibility of witnesses is solely within the province of the jury. *People v. Sprouse*, 983 P.2d 771, 778 (Colo.1999). A verdict in a criminal case, however, may not be based on guessing, speculation, or conjecture. *Id.*

### B. Law

A person commits first degree extreme indifference murder when, "[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally," the person knowingly engages in conduct that creates a grave risk of death to others and "thereby causes the death of another." § 18–3–102(1)(d), C.R.S.2010.

A person commits reckless manslaughter when the person "recklessly causes the death of another person." § 18–3–104(1)(a), C.R.S. 2010.

A person commits criminal attempt when, "acting with the kind of culpability otherwise required for commission of an offense, [the person] engages in conduct constituting a substantial step toward the commission of the offense." § 18–2–101(1), C.R.S.2010. A "substantial step" means any conduct that is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. *Id.; People v. Lehnert*, 163 P.3d 1111, 1114 (Colo.2007) ("the ultimate inquiry under the statutory definition concerns the extent to which the actor's conduct is strongly corroborative of the firmness of his criminal purpose, rather than the proximity of his conduct to consummation of the crime").

■ Under principles of complicity, a person is legally accountable for the actions of another if, "with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in ... committing the offense." § 18–1–603, C.R.S.2010. To be a complicitor,

the person must have knowledge that the principal intends to commit the crime, must intend to promote or facilitate the commission of the offense, and must aid, abet, advise, or encourage the principal in the commission or planning of the crime. *Bogdanov v. People,* 941 P.2d 247, 253–54 & n. 10 (Colo.), *modified,* 955 P.2d 997 (Colo.1997), *disapproved of on other grounds by Griego v. People,* 19 P.3d 1 (Colo.2001).

### C. Reckless Manslaughter

Defendant contends that the evidence is insufficient to support a determination by the jury that he is liable either as a principal or as a complicitor for recklessly causing the death of the victim. We agree.

### 1. Evidence Regarding Second Group of Gunshots

■ We begin by assessing whether the evidence is sufficient to support a determination that a bullet fired during the second group of gunshots from Montoya's weapon, which defendant could have fired, caused the death of the victim.

The evidence established that the host went to the bedroom and told the occupants, which included the victim, that someone had pulled a gun. As the victim was getting up from the couch, the first set of gunshots rang out, the host yelled, "Get down," and the victim went down on the floor. No evidence indicates that the victim ever got up from this position at any time thereafter. She was found unconscious in the same position after all the shooting ended.

Expert testimony and physical evidence admitted at trial also indicated that the bullet hit the victim in the head at approximately fifty-five inches from her heel, and that a bullet entered through the bedroom window screen at approximately fifty-three inches above the floor. The host testified that the bottom of the window was around three and a half to four feet from the bottom of the floor.

Although the prosecution's experts testified that they could not determine the precise trajectory of the bullet that entered through the window screen, the expert testimony and the physical evidence before the jury allows only a range of reasonable inferences regarding the trajectory of the bullet. The jury could not reasonably infer that the bullet could have entered the window screen at such a steep angle that it could travel downward to hit the victim while she was on the floor because the undisputed evidence established that the second group of gunshots fired toward the house was fired from no higher than the top of defendant's car. There is no evidence that the car was situated on a hill or was otherwise above the level of the house itself. Although it is possible that the bullet could have ricocheted and thus changed trajectory before or after entering the window screen, no evidence was offered to support such a theory.

Accordingly, the evidence only supports a conclusion that the victim must have been struck by the bullet while starting to stand up or standing, an action that could only have taken place immediately before or during the first five gunshots.

The People nevertheless contend that the evidence supports several theories for how the victim could have been shot in the head when the second group of gunshots was fired. First, the People contend that the evidence supports a determination that the victim did not get down on the floor when the shooting began. But no direct or circumstantial evidence or any reasonable inference therefrom indicates that the victim did so. The host testified that the victim did get down, and no one contradicted that testimony. Hence, the jury would be required to speculate as to the victim's actions to arrive at such a conclusion.

The People also contend that the evidence supports a determination that the victim dropped to the floor initially but got up again after the first group of gunshots was fired, because a witness testified that she (the witness) got up between the first and second group of gunshots. But the fact that another person got up from the floor between the two groups of gunshots is not circumstantial evidence, or support for a reasonable inference, that the victim did so.

The People also assert that the evidence shows the victim put her arms over her head and went down to the floor volitionally dur-

ing the first gunshot volley. But that evidence does not support an inference that she was struck during the second round of shots, given the undisputed entry of the fatal bullet through the screen at fifty-three inches above the floor.

Hence, the People's theories are based on surmise, speculation, or conjecture about the victim's actions during the shooting; they are not supported by the evidence or reasonable inferences from it.

We therefore conclude that the evidence was insufficient to support a conclusion by the jury that a bullet from the second group of gunshots, which indisputably occurred after the victim was on the floor, caused her death. Accordingly, defendant could not be convicted of reckless manslaughter either as principal or complicitor (assuming he drove his car while Montoya fired the shots) for the second group of shots.

### 2. Evidence Regarding First Group of Gunshots

■ Because there is insufficient evidence that a bullet from the second group of shots caused the victim's death, and because there is no evidence that someone other than Montoya fired the first five shots from the weapon that must have killed the victim, defendant can only be liable for recklessly causing the death of the victim if sufficient evidence was presented that he acted as a complicitor as to those first five gunshots.

When viewed in the light most favorable to the prosecution, testimony indicated that defendant drove some members of the group to the party, that he was with the group before the confrontation began, that he ran out of the house and went to his car after the confrontation, and that he told Montoya, "Let's go," after Montoya fired the first group of five gunshots. There was no evidence of defendant's actions or any statement he made during the confrontation or during the period when the first group of gunshots was fired at the house.

Merely driving persons to the party, being present there, and being associated with Montoya are insufficient to support a determination of complicity. See United States v.

*Murray,* 988 F.2d 518, 522 (5th Cir.1993) (mere presence and association are insufficient to sustain a conviction for aiding and abetting).

The People contend that the evidence was sufficient to support a determination that defendant was complicit in the first group of gunshots because it raised an inference that defendant's group "went to the party looking to start a fight" and showed that defendant knew someone in the group had brought a gun to the party.

The record supports a determination that members of defendant's group acted obnoxiously and belligerently before Montoya's confrontation with the host's friend and that Montoya intended to "slap someone" at the party. But the testimony on this point does not indicate which members of the group engaged in these actions. Even though the jury might reasonably infer, based on this evidence, that defendant acquiesced in such behavior, and that he knew Montoya had a gun, such inferences do not support a determination that he intended to facilitate or promote the later shooting.

Moreover, even if the evidence cited by the People could give rise to a reasonable inference of defendant's intent to facilitate or promote the crime, there was no evidence of defendant's actions during the confrontation or during the first group of gunshots that would support a determination that defendant aided, abetted, advised, or encouraged Montoya in firing the first group of gunshots at the house.

The People also contend that defendant could be liable as a complicitor because evidence indicated that he drove the getaway car while Montoya fired the second group of gunshots. But those actions occurred *after* Montoya had fired the first group of gunshots. They are not evidence that defendant aided, abetted, advised, or encouraged Montoya in firing the first group of shots. *See People v. Green,* 884 P.2d 339, 344 (Colo.App. 1994) (later discovery that the principal committed a crime cannot provide a basis for complicitor liability).

Nevertheless, citing *People v. Larson,* 194 Colo. 338, 341, 572 P.2d 815, 817 (1977), the

People contend that merely driving a getaway car is sufficient evidence of complicity. We disagree.

*Larson* does not establish such a broad rule. The *Larson* court held that evidence of complicity was sufficient where the defendant was waiting near the location of a robbery, he sped away with the robbers when they said, "Let's get out of here," and his car was equipped with stolen license plates. *Id.* A trier of fact in that case could therefore infer that the defendant intended to promote or facilitate the crime and had undertaken actions before the robbery to aid the robbers.

Here, however, the jury could not reasonably infer, from the fact that defendant drove to the party with Montoya and then said, "Let's go," from the car after Montoya fired the first group of five gunshots, that defendant intended to promote or facilitate the first five shots or that he acted to aid Montoya in shooting that group of shots.

The evidence is therefore insufficient to support a determination that defendant aided, abetted, advised, or encouraged Montoya in firing the first group of gunshots at the house, and the evidence only supports a conclusion that the fatal shot came from the first group of shots. We therefore conclude that the evidence was insufficient to support the jury's guilty verdict for reckless manslaughter. Accordingly, we must vacate defendant's conviction for that crime.

### D. Attempt to Commit Extreme Indifference Murder

■ We reach a different result concerning defendant's contention that the evidence is insufficient to support the jury's guilty verdict for attempted extreme indifference murder of the victim.

Viewed in the light most favorable to the prosecution, the evidence indicates that defendant fired the second group of five gunshots from the car at the house, which was still filled with people (including the victim), as he and Montoya sped away. The jury therefore could have determined that his actions evidenced an attitude of universal malice manifesting extreme indifference to the value of human life. *See People v.*

*Jefferson,* 748 P.2d 1223, 1227 (Colo.1988) (discharge of a firearm into a crowd of people and firing several shots into a home known to be occupied are examples of conduct manifesting extreme indifference to the value of human life generally). It also could have determined that these actions constituted a substantial step toward the commission of murder because they strongly corroborate a sufficiently firm intent on defendant's part to commit extreme indifference murder. *See Lehnert,* 163 P.3d at 1115–16.

Defendant nevertheless contends that because the evidence conclusively establishes that the victim died, the evidence is insufficient to support a conviction for attempted murder. But, as we concluded above, the evidence establishes that the victim died as a result of a bullet fired in the first group of gunshots. Sufficient evidence thus exists to support a determination that defendant, by firing the second group of gunshots, took a substantial step toward causing the death of the victim, although he did not actually cause her death. *Cf. Lewis v. People,* 124 Colo. 62, 67, 235 P.2d 348, 350–51 (1951) (where a defendant has committed a completed crime, "there can be no prosecution for attempt" (quoting 14 Am.Jur. *Attempts to Commit Crime* 83) (emphasis omitted)).

Citing *Apodaca v. People,* 712 P.2d 467, 475 (Colo.1985), defendant asserts that where the evidence establishes that a completed crime has occurred, a defendant cannot be liable for the concomitant attempt crime. Defendant's reliance on the case is misplaced.

In *Apodaca,* the prosecution charged the defendant with second degree kidnapping. Evidence showed that the defendant had accosted the victim on a street, forced her at knifepoint to get into his truck, and drove some distance before she was able to escape. The supreme court determined that the defendant was not entitled to a lesser included offense instruction on attempted second degree kidnapping because the evidence demonstrated that a completed kidnapping had occurred. The court applied the principle that, to be entitled to a lesser included offense instruction, there must be a rational

basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense; where the evidence is such that the defendant must either be guilty of the greater offense or not guilty of any criminal conduct at all, an instruction on a lesser included offense is inappropriate. *Id.* In holding that the defendant was not entitled to a lesser included offense instruction, the court essentially concluded that where the evidence establishes that the crime, if committed by the defendant, was completed, a jury cannot determine that the defendant failed to complete the crime.

Here, it is true that the evidence established that a homicide crime was completed because the victim died. But even so, there is nevertheless a rational basis to acquit defendant of the completed homicide, yet still convict him of attempted extreme indifference murder of the victim, because there were two potentially liable persons here, and the evidence showed defendant was not liable for the completed homicide. Hence, even if there is a completed crime, committed by Montoya when he fired the first group of gunshots, the evidence nevertheless is sufficient to show that defendant was liable for attempted murder when he fired the second group of gunshots because his actions were a substantial step toward causing the death of the victim, although they did not actually cause her death.

Accordingly, *Apodaca* does not require us to conclude that the evidence was insufficient to support defendant's conviction for the attempted murder.

Defendant also contends the evidence establishes that the victim was already dead when the second group of gunshots was fired. But the evidence, viewed in the light most favorable to the prosecution, supports a determination that the victim was unconscious, but still alive, at that time. Moreover, defendant did not know when he fired the second group of shots that the victim was dead or dying. And even if the victim were already dead, impossibility is not a defense to an attempt crime. § 18-2-101(1); *People v. Buerge,* 240 P.3d 363, 368 (Colo.App.2009).

Sufficient evidence therefore supports the jury's guilty verdict for attempted extreme indifference murder of the victim.

### III. Instruction on Attempted Murder as a Lesser Included Offense

Defendant contends that the trial court erred by instructing the jury on the crime of attempted extreme indifference murder as a lesser included offense. He also contends that the instruction constituted a constructive amendment of the indictment. We disagree.

#### A. Standard of Review

█ Where, as here, a defendant fails to object to an instruction at trial, we review for plain error. *See People v. Vigil,* 127 P.3d 916, 929-30 (Colo.2006); *People v. Miller,* 113 P.3d 743, 749 (Colo.2005).

█ "Plain" in this context is synonymous with "clear" or "obvious." *Lehnert v. People,* 244 P.3d 1180, 1185 (Colo.2010). Plain error is error that is so clear-cut, so obvious, that a competent trial judge should be able to avoid it without benefit of objection. *People v. O'Connell,* 134 P.3d 460, 464 (Colo.App. 2005) (citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Plain error requires reversal if, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Lehnert,* 244 P.3d at 1185; *Miller,* 113 P.3d at 750.

█ In the context of instructional plain error, a defendant must demonstrate not only that the erroneous instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction. *Lehnert,* 244 P.3d at 1185; *Bogdanov,* 941 P.2d at 255-56.

█ We also review for plain error a claim of constitutional error to which no objection was raised in the trial court. *Miller,* 113 P.3d at 748.

### B. Law

██ A defendant may be convicted of an offense included in an offense charged in the indictment. An offense is so included when, among other things, it consists of an attempt to commit the charged offense. § 18–1–408(5)(b), C.R.S.2010.

██ Under the "same elements" test, an offense is a lesser included offense if proof of the facts establishing the greater offense necessarily establishes all the elements of the lesser offense. § 18–1–408(5)(a), C.R.S.2010; *People v. Leske,* 957 P.2d 1030, 1036 (Colo. 1998). We consider the statutory elements of the offenses in question, not the evidence presented at trial, to determine whether an offense is a lesser included offense. *Leske,* 957 P.2d at 1036.

██ Under principles of due process, the charging document must give a defendant adequate notice of the charges lodged against him. *People v. Garcia,* 940 P.2d 357, 362 (Colo.1997). As a matter of law, a defendant has adequate notice of an uncharged offense that meets the definition of a lesser included offense. *Id.*

██ A constructive amendment occurs where the jury instructions change an element of the charged offense and thereby alter the substance of the charging instrument. *People v. Rodriguez,* 914 P.2d 230, 257 (Colo.1996).

### C. Application

Defendant contends that because the evidence established that his actions did not cause the victim's death, the attempt charge, as applied to him in this case, is not a lesser included offense of the murder charge contained in the indictment. But we do not consider the evidence presented at trial when analyzing offenses under the same elements test. *Leske,* 957 P.2d at 1036. Instead, we consider only the elements. *Id.*

██ Here, attempted first degree extreme indifference murder is a lesser included offense of extreme indifference murder. *See* § 18–1–408(5)(b) ("A defendant may be convicted of an offense included in an offense charged in the indictment. . . . An offense is so included when . . . [i]t consists of an attempt . . . to commit the offense charged. . . ."). In addition, the only difference between the two offenses is that first degree murder by extreme indifference requires proof that the defendant's actions caused the death of the victim. *See People v. Harlan,* 8 P.3d 448, 479 (Colo.2000) (concluding that attempted first degree murder after deliberation is a lesser included offense of first degree murder after deliberation). Accordingly, the trial court committed no error, plain or otherwise, by instructing the jury on the attempt crime as a lesser included offense.

██ For the same reasons, defendant also had adequate notice of the attempted murder charge because it is a lesser included offense of the murder charge contained in the indictment. In addition, because the same elements test is satisfied, the instruction did not change an element of the charged offense. The instruction therefore did not constitute a constructive amendment.

### IV. Instruction on Completed and Attempted Reckless Manslaughter as Nonincluded Offenses

Defendant contends that the trial court erred by instructing the jury to consider completed and attempted reckless manslaughter of the named victim as lesser non-included offenses of completed and attempted first degree extreme indifference murder. We agree.

### A. Standard of Review

██ Where, as here, a defendant fails to object to the trial court's instructions to the jury, we review for plain error. *Miller,* 113 P.3d at 749. As previously noted, "plain" in this context is synonymous with "clear" or "obvious." *Lehnert,* 244 P.3d at 1185. Any such error must affect substantial rights and the record must reveal a reasonable possibility that the error contributed to the conviction. *Id.; Miller,* 113 P.3d at 750.

 Under the doctrine of invited error, however, a party may not complain if he has been the instrument for injecting error into the case, such as by tendering an erro-

neous jury instruction. *People v. Zapata,* 779 P.2d 1307, 1308–09 (Colo.1989). We note that generally, because of notice concerns, only a defendant can request an instruction on a lesser nonincluded offense. *See People v. Rivera,* 186 Colo. 24, 28, 525 P.2d 431, 434 (1974); *Garcia,* 940 P.2d at 361–63. Because the record, however, does not reveal whether defendant, Montoya, or the prosecution requested the instructions as lesser nonincluded (or the court gave the instructions sua sponte), and because the People do not contend on appeal that defendant invited the error, we will review for plain error.

### B. Law

As previously noted, under the same elements test, an offense is a lesser included offense if proof of the facts establishing the greater offense necessarily establishes all the elements of the lesser offense. *Leske,* 957 P.2d at 1036. When a lesser offense is a lesser included offense, a defendant cannot be convicted of both the greater and the lesser offense. *See People v. MacBlane,* 952 P.2d 824, 827 (Colo.App.1997).

A lesser nonincluded offense may be any offense lesser in severity than the original charged offense, provided that such lesser offense arises from the same facts leading to the original charge and that such lesser offense also contains at least one element not contained in the charged offense. *People v. Skinner,* 825 P.2d 1045, 1047 (Colo.App. 1991).

In situations involving a lesser nonincluded offense, a jury may properly convict a defendant of both the original charged offense and the lesser nonincluded offense. *MacBlane,* 952 P.2d at 826. However, it is error to instruct the jury on an offense as a lesser nonincluded offense when the offense actually constitutes a lesser included offense. *Id.* at 826–27.

### C. Application

The People concede, and we agree, that reckless manslaughter is a lesser included offense of first degree extreme indifference murder because the offenses differ only as to degree of culpability. *See* § 18–1–

408(5)(c), C.R.S.2010 (an offense is a lesser included offense if the two differ only as to degree of culpability); *People v. Medina,* 51 P.3d 1006, 1014 (Colo.App.2001) (reckless manslaughter is a lesser included offense of second degree murder), *aff'd sub nom. Mata–Medina v. People,* 71 P.3d 973 (Colo. 2003); *People v. Rodriguez,* 888 P.2d 278, 284 (Colo.App.1994) (second degree murder is a lesser included offense of first degree extreme indifference murder). The People also concede, and we agree, that instructing the jury on reckless manslaughter as a nonincluded offense was error. Because we have vacated the conviction for the completed crime of reckless manslaughter, however, and defendant may not be retried for that crime, we need not further address any error as to the completed homicide charge.

For the same reason that the completed crime of reckless manslaughter is a lesser included offense of first degree extreme indifference murder, we conclude that attempt to commit reckless manslaughter is a lesser included offense of attempt to commit first degree extreme indifference murder. *See* § 18–1–408(5)(b) (attempt to commit offense charged is a lesser included offense); *Brown v. People,* 239 P.3d 764, 767 (Colo.2010) (attempted second degree murder is a lesser included offense of attempted first degree murder); *People v. Hennion,* 923 P.2d 256, 258–59 (Colo.App. 1995) (attempted reckless manslaughter is a lesser included offense of attempted second degree murder).

Here, in instruction 19, the jury was instructed that, in addition to considering the first degree murder and its attempt subordinate, "the jury must also consider whether … defendant committed other crimes which are not included in the charged offenses" and the instruction then identified reckless manslaughter and attempted reckless manslaughter as such crimes. Thus, the jury was erroneously instructed that it could convict defendant of both the greater offense of first degree extreme indifference murder and the lesser included offense of reckless manslaughter, and erroneously instructed that it could convict defendant of both the greater offense of attempted murder and the lesser

included offense of attempted reckless manslaughter. *See MacBlane*, 952 P.2d at 826–27. Instead, it should have been instructed that defendant could only be convicted of one completed homicide offense, or of one attempt. *See id.*

■ As to the attempt crimes, the record reveals a reasonable possibility that the error contributed to defendant's conviction for attempted first degree extreme indifference murder. If the jury had been instructed that it could find defendant guilty of only one of the two attempt crimes, instead of being instructed that it must consider them separately, there is a reasonable possibility it would have chosen the lesser included offense of attempted reckless manslaughter. Indeed, as evidenced by its guilty verdict for the completed crime of reckless manslaughter, the jury in this case believed defendant undertook at least some actions with the lesser degree of culpability. For the same reasons, we conclude that the error affected defendant's substantial rights because the level of felony and severity of potential sentences for the crimes are much different.

We also conclude that the error is obvious. Section 18–1–408(5)(b) specifically states that an attempt to commit a crime is a lesser included offense of the charged crime. The case law reflected at least as of 2001 that reckless manslaughter is a lesser included offense of extreme indifference murder, *see Medina*, 51 P.3d at 1014; *Rodriguez*, 888 P.2d at 284; and this case was tried in 2006. *MacBlane*, which makes it clear that it is error to instruct on a crime as a lesser nonincluded offense when the offense is lesser included, 952 P.2d at 826–27, has been the law since 1997.

Because the error is plain, we must accordingly reverse the conviction and remand for a new trial on the attempted first degree extreme indifference murder charge. On retrial, if lesser included offenses are properly requested and the evidence reveals a rational basis for a verdict acquitting defendant of the greater attempt offense and convicting him of a lesser included attempt offense, *see* § 18–1–408(6), C.R.S.2010, the court shall instruct the jury accordingly.

We specifically note that no party has argued merger or the doctrine of inconsistent verdicts in the principal briefs. Accordingly, we will not address how, if at all, those principles might apply in this situation, or whether any remedy they could provide might be different.

## V. Self–Defense Instruction

Defendant contends that the trial court erred by using the terms "justified" and "justifiably" in the self-defense instruction, by instructing the jury that it *"may* consider" self-defense, and by instructing the jury on the provocation and initial aggressor concepts of self-defense law. Because this issue is likely to arise on remand, we address this contention.

### A. The Instruction

The trial court instructed the jury on self-defense as follows:

In determining whether the circumstances before the jury evidence [an attitude of universal malice manifesting extreme indifference to the value of human life generally], you may consider whether the defendant was justifiably acting in self-defense. The following rules may help you in deciding whether a defendant was justified in using force, or deadly force, to defend himself.

(1) A person is justified in using deadly physical force to defend himself when he reasonably believes that a lesser degree of force is inadequate, and has reasonable grounds to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury.

. . .

(2) A person is not justified in using physical force if:

(a) with intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person; or

(b) he is the initial aggressor. . . .

### B. Self–Defense Law

Section 18–1–704, C.R.S.2010, provides:

(1) Except as provided in subsections (2) and (3) of this section, a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury. . . .

(3) Notwithstanding the provisions of subsection (1) of this section, a person is not justified in using physical force if:

(a) With intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person; or

(b) He is the initial aggressor. . . .

(4) In a case in which the defendant is not entitled to a jury instruction regarding self-defense as an affirmative defense, the court shall allow the defendant to present evidence, when relevant, that he or she was acting in self-defense. If the defendant presents evidence of self-defense, the court shall instruct the jury with a self-defense law instruction. The court shall instruct the jury that it may consider the evidence of self-defense in determining whether the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner. However, the self-defense law instruction shall not be an affirmative defense instruction and the prosecuting attorney shall not have the burden of disproving self-defense. This section shall not apply to strict liability crimes.

■■■ Self-defense can either be an affirmative defense in the nature of confession and avoidance, or an element-negating defense, such as in the case of extreme indifference murder and reckless or negligent crimes. *People v. Lara,* 224 P.3d 388, 393 (Colo.App.2009). Where a defendant asserts self-defense as an element-negating defense, the statutory language notwithstanding, the prosecution must disprove beyond a reasonable doubt that the defendant acted in reasonable self-defense. *Id.* at 395.

## C. Application

### 1. "Justified" Language

■■■ Defendant first contends that the use of the terms "justified" and "justifiably" improperly instructed the jury to determine whether his belief that he had been threatened with imminent unlawful physical force was correct, not merely reasonable. The instruction as a whole, however, informed the jury that defendant's belief must have been reasonable. Moreover, the language of the instruction substantially mirrors the language of the statute.

We therefore conclude that the instruction as a whole accurately informed the jury of the reasonableness requirement. On remand, however, the court may consider whether it should modify the instruction in the manner suggested by the division in *Lara.*

### 2. "May Consider" Language

■■■ Defendant next contends that the court's instruction, that the jury "may consider" self-defense, instead of "must" consider it, misled the jury about the burden of proof. The statute itself uses the word "may." But while there may not be a meaningful difference between an instruction informing the jury that it "may" consider evidence, and one informing it that it "must" consider evidence, *see People v. Lucas,* 232 P.3d 155, 163 (Colo. App.2009), on retrial the court should instruct the jury that it must decide whether defendant was acting in reasonable defense of himself or others when considering whether defendant acted under circumstances evidencing extreme indifference. *See Lara,* 224 P.3d at 395. Such an instruction "accurately states the prosecution's burden of proof." *Id.* at 396.

### 3. Provocation and Initial Aggressor

Defendant contends that the self-defense statute allows instructions on provocation and initial aggressor concepts only where self-defense is asserted as an affirmative defense, not where self-defense is an element-negating defense under subsection (4) of the statute. It is true that subsection (3) of section 18–1–704, which contains the reference to provocation and initial aggressor principles, refers back to only subsection (1), and not to subsection (4). But subsection (1) does not, by its terms, apply only to situations in which self-defense is asserted as an affirmative defense. Rather, subsection (4) provides that the trial court "shall instruct the jury with a self-defense law instruction." The rules contained in subsections (1) through (3) of section 18–1–704 encompass "self-defense law" in Colorado.

 We therefore conclude that the statute mandates provocation and initial aggressor instructions in cases where self-defense is asserted as an element-negating offense under subsection (4), if such instructions are otherwise warranted by the evidence in the case.

Accordingly, on remand, and if there is evidence to support the contention that defendant, "with intent to cause bodily injury or death to another person . . . provoked the use of unlawful physical force by that other person," or "was the initial aggressor," *see* § 18–1–704(3)(a)–(b), the court may again instruct the jury on those concepts.

The judgment of conviction for reckless manslaughter is vacated, the judgment of conviction for attempted first degree extreme indifference murder is reversed, and the case is remanded for a new trial on attempted extreme indifference murder, consistent with the views set forth in this opinion.

Judge FOX and Judge NIETO * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and