The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 9, 2018

## 2018COA111

**No. 14CA0478, *People v. Halaseh* — Crimes — Theft —
Aggregated Theft; Criminal Law — Appeals — Reviewing Court
Must Maximize Effect of Jury's Verdict**

This case concerns a multi-year theft committed by defendant.
It raises two questions.

First, may defendant be convicted for a single count of
aggregated theft under section 18-4-401(4) for thefts that occurred
between January 2008 and January 2011?  We conclude no
because of the changing charging requirements for aggregated theft
enacted between 2008 and 2011.

Second, where the prosecutor incorrectly charged defendant
with one class 3 felony theft count for aggregated theft, may we
remand the case to the trial court to enter judgment of conviction
for four class 4 felony theft counts?  We conclude yes because of the

implicit jury findings within defendant's conviction, and because we must maximize the effect of a jury's verdict to yield as many convictions as possible.

COLORADO COURT OF APPEALS                                    2018COA111

---

Court of Appeals No. 14CA0478
El Paso County District Court No. 12CR4638
Honorable Theresa M. Cisneros, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John M. Halaseh,

Defendant-Appellant.

---

JUDGMENT VACATED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE HAWTHORNE
Navarro and Casebolt*, JJ., concur

Prior Opinion Announced July 27, 2017, <u>WITHDRAWN</u>
Petition<u>s</u> for Rehearing <u>GRANTED</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON July 27, 2017, IS NOW DESIGNATED FOR PUBLICATION

Announced August 9, 2018

---

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Defendant, John M. Halaseh, appeals his conviction for class 3 felony theft. We vacate the judgment and remand the case for entry of four convictions for class 4 felony theft and for correction of the mittimus and to resentence defendant accordingly.

## I.    Facts and Procedural History

¶ 2    Defendant assisted his father in setting up a joint bank account for depositing his father's Supplemental Security Income (SSI) checks from the Social Security Administration (SSA). One month later, defendant's father left the United States to live in Jordan. He never returned. Though the SSI application and notice of award informed defendant's father that he must report to the SSA if he left the United States for more than thirty days, he never did so.

¶ 3    From January 2008 to January 2011, the SSA deposited checks monthly into the joint account, and defendant withdrew the funds to pay for household expenses. When the SSA realized that defendant's father had been outside the country for years, it sent two agents to defendant's home. Defendant confessed to the agents that he knew the funds were "government money" and that it was wrong for him to take them. Later, defendant received a letter from

1

the SSA informing him that $24,494 had been overpaid to his father.

¶ 4 Defendant was charged with a single count of theft of $20,000 or more from the SSA. At trial, the prosecution introduced an exhibit detailing thirty-seven instances of theft committed by defendant totaling $24,494. A jury found defendant guilty as charged.

## II. Sufficiency of the Evidence

¶ 5 Defendant contends that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he committed theft.[1] We disagree.

### A. Standard of Review and Applicable Law

¶ 6 We review de novo whether evidence is sufficient to support a conviction. *People v. Randell*, 2012 COA 108, ¶ 29. To determine whether the prosecution presented sufficient evidence, we apply a substantial evidence test that considers "whether the relevant

---

[1] Defendant also contends that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he stole more than $20,000 within the prescribed units of prosecution permitted under the theft statutes in effect on the dates included within the single theft count. We address that specific contention later in Part IV.

2

evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010) (citation omitted). We "must give the prosecution the benefit of every reasonable inference which may be fairly drawn from the evidence." *Id.* at 1292.

¶ 7    As pertinent here, a defendant commits theft when "he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception" and "[i]ntends to deprive the other person permanently of the use or benefit of the thing of value." § 18-4-401(1)(a), C.R.S. 2017.

### B.    Analysis

¶ 8    Initially, we reject the People's contention that defendant waived any challenge to whether the funds belonged to the SSA. Even if defendant may have conceded this point in his closing argument, "the prosecution has the burden of establishing a prima facie case of guilt through introduction of sufficient evidence." *Clark*, 232 P.3d at 1291; *see also Randell*, ¶ 30 (reasoning that a

defendant may raise a sufficiency challenge "without moving for a judgment of acquittal in the trial court").

¶ 9     The evidence, when viewed in the light most favorable to the prosecution, was sufficient for a reasonable person to conclude that defendant committed theft.  This evidence included the following:

- Within the first month of living with defendant, defendant's father went with defendant's wife to the SSA to apply for SSI.

- The SSI application outlined defendant's father's obligations, including reporting to the SSA if "[y]ou leave the United States for 30 days or more."

- Defendant helped his father establish a joint bank account where his father deposited his first several SSI checks.

- A few weeks before taking his father to Jordan, defendant helped his father set up a direct deposit into the joint bank account.

- Defendant admitted to investigators that he used the SSI checks to pay for various expenses.  Bank records showed the funds were deposited into the checking

4

account monthly, and that defendant used the funds for credit card payments, cash withdrawals, and mortgage payments.

- Defendant told investigators he knew the funds were "government money" and that he knew it "wasn't right" to use the funds for his expenses.

- Defendant wrote and signed a statement which stated: "I knew we should have stopped [my father's] SSI benefits but I needed the money to help pay for the house and take care of my family . . . I knew I shouldn't have taken this money once he left the U.S. and I am willing to work on paying it back once my house sells."

- Defendant received a letter from the SSA informing him that $24,494 of SSI funds had been overpaid because his father had been outside the United States.

¶ 10 Defendant argues, however, that the prosecution failed to present sufficient evidence that (1) the SSA, and not defendant's father, had any possessory or proprietary interest in the $24,494 such that it was the victim of theft; and (2) he knowingly took the

5

money without authorization, or by threat or deception.  We disagree.

¶ 11    First, a reasonable juror could infer that defendant's father was not an intermediary victim as defendant suggests, but part of defendant's deception to obtain government funds.  Thus the checks and direct deposits from the SSA were sufficient evidence to show that the SSA had a possessory interest in the $24,494.  And second, a juror could infer from defendant's actions, statements, and expenses that he knowingly deceived the SSA when he led the agency to believe that his father, and not he, would receive the benefit of the deposited funds.  Accordingly, we conclude that the prosecution presented sufficient evidence for a reasonable juror to find beyond a reasonable doubt that defendant committed theft from the SSA.

### III.    Jury Instruction

¶ 12    Defendant concedes failure to preserve, but contends that the trial court plainly erred when it failed to instruct the jury (1) on the definition of the word "another" in the theft statute and (2) on its requirement to find that the "aggregate value" exceeded $20,000 within one of the prescribed units of prosecution.  The People

respond that defendant waived instructional error, if any. But even if defendant did not waive this argument, we conclude that the trial court did not plainly err.

## A. Standard of Review

¶ 13 We review unpreserved instructional errors for plain error. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). Plain error occurs where the error is both "obvious and substantial" and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (citations omitted).

## B. Analysis

### 1. Definition of "Another"

¶ 14 At trial, the court instructed the jury on the elements of theft. Its instruction included the following elements: "[t]hat defendant . . . knowingly obtained or exercised control over anything of value which was the property of another person."

¶ 15 Defendant argues that the trial court should have included an additional instruction to define the word "another." Specifically, he cites section 18-4-401(1.5), which provides that "[a] thing of value is that of 'another' if anyone other than the defendant has a

possessory or proprietary interest therein." He then argues that this alleged error harmed him because (1) the prosecution never proved that the SSA had a possessory or proprietary interest in the funds, and (2) his defense against the charges was on the ground that he did not know the money was the property of the SSA.

¶ 16　But, for three reasons, we discern no plain error.

¶ 17　First, defendant fails to cite any authority requiring an instruction defining "another" in a theft case. *See Scott v. People*, 2017 CO 16, ¶ 17 ("[A]n error is generally not obvious when nothing in Colorado statutory or prior case law would have alerted the trial court to the error.").

¶ 18　Second, the SSA's possessory or proprietary interest in the funds was not, despite defendant's arguments, a disputed issue in this case. The disputed issue was whether defendant *knew* the SSA had an interest in the funds, not whether it *actually had* an interest in them. Even defendant's counsel admitted to the jury that the funds were the property of the SSA:

> [A]nd so you have to be proven beyond a
> reasonable doubt that [defendant] knew that
> the money he had belonged to the Social
> Security Administration. He believed it
> belongs to [his father]. He believed that he

could use it because [his father] told him he could. *He did not know that that was the property of the Social Security Administration.*

¶ 19 Finally, testimony and a written confession signed by defendant showed that defendant knew the funds were government money. An SSA special agent testified that defendant told him that "he knew [the funds were] government money." And defendant's written confession stated that he was "willing to work on paying [the funds] back" to the SSA.

¶ 20 For these reasons, we discern no error, much less plain error, in the trial court's not instructing the jury on the definition of the word "another" in the theft statute. *See People v. Dunlap*, 124 P.3d 780, 794 (Colo. App. 2004) ("Failure to instruct the jury . . . does not constitute plain error where the subject of the error in the instruction is not contested at trial or where evidence of the defendant's guilt is overwhelming.").

2. Aggregate Value

¶ 21 For reasons explained *infra* Part IV, we agree that the trial court plainly erred when it instructed the jury that it could find defendant guilty of stealing $20,000 or more. But we disagree that the error harmed defendant.

9

¶ 22    Had the court given the proper instruction — that is, had it correctly instructed the jury as to both the prescribed units of prosecution and the proper values required to be found within those units — the jury's findings of guilt would have remained the same.  We know this because the jury found that defendant stole more than $20,000, and the uncontested evidence showed when the individual amounts were taken.  *See State v. Gidden*, 455 N.W.2d 744 (Minn. 1990) (concluding that, even though the trial court did not instruct the jury that defendant's aggregated thefts exceeding $2500 had to occur within a six-month period, there existed no reasonable likelihood that the giving of the instruction would have significant effect on the verdict where any six-month period of defendant's thefts exceeded $2500).  Thus the error did not harm defendant.

¶ 23    Defendant sees things differently.  He assumes that, had the court been alerted to its improper instruction, it would have done one of two things.  Either it would have

- "instructed the jury that it must find, beyond a reasonable doubt, that the aggregate value of the thefts

during any six-month period was greater than $20,000";
or

- "instructed the jury that it must find, beyond a reasonable doubt, that the aggregate value of the thefts after May 11, 2009 and committed 'against the same person pursuant to one scheme or course of conduct' was greater than $20,000."

Working on this assumption, defendant argues that the jury would not have found him guilty. Thus the error, according to him, harmed him.

¶ 24    That is true — if you accept defendant's assumption. And that is the problem with his argument. Defendant's assumption requires us to conclude that, had the court been alerted to its mistake, it would have simply gone on to make another mistake by instructing the jury incorrectly in one of the two incorrect ways mentioned above. This is nothing but conjecture. We must assume that the trial court, if alerted, would have acted properly. *See Loomis v. Seely*, 677 P.2d 400, 401 (Colo. App. 1983). And defendant provides no evidence to persuade us otherwise. So we reject his argument.

¶ 25    Therefore, because a proper jury instruction would not have changed the jury's findings, we discern no harm to defendant and thus no plain error by the trial court.

## IV.    Aggregated Theft

¶ 26    Defendant contends that the prosecution failed to prove that he took $20,000 or more within any prescribed unit of prosecution permitted under the theft statutes in effect on the offense dates. The People concede, and we conclude, that the trial court erred by entering judgment for a class 3 felony theft on the jury's verdict.

### A.    Standard of Review

¶ 27    Because this case requires us to interpret section 18-4-401(4)(a)-(b), it presents legal questions that we review de novo. *See People v. Kailey*, 2014 CO 50, ¶ 12.

### B.    Aggregating Thefts Under Section 18-4-401(4)

¶ 28    We begin by reviewing *Roberts v. People* because it informs our analysis of section 18-4-401(4). 203 P.3d 513 (Colo. 2009), *superseded by statute as recognized in People v. Simon*, 266 P.3d 1099, 1108 (Colo. 2011). In *Roberts*, the supreme court considered section 18-4-401(4) as it existed before it was amended in 2009; this pre-amendment statute also applies to defendant's pre-June

2009 offenses. *See generally id.* The defendant in *Roberts* was charged with one count of theft of $15,000 or more, although the evidence showed that he had committed multiple thefts from the same victim (7-Eleven) at three different stores over twenty-seven months. *Id.* at 515-16. *Roberts* held that pre-amendment section 18-4-401(4)(a) treated "as a single theft all thefts committed by the same person in a six-month period." *Id.* at 517-18. *Roberts* also held that, under the then-current version of section 18-4-401(4)(a), "all thefts committed by the same person within a six-month period . . . [*must*] be joined and prosecuted as a single felony." *Id.* at 516.

¶ 29    In determining the felony classification of that single theft offense, a jury could aggregate the value of all things taken by the defendant during that six-month period. *See id.* (Multiple thefts committed by the same person within a six-month period "constitute a single crime of theft, the classification of which is determined by the aggregate value of all of the things involved."). The corollary of this principle is that a theft occurring *outside* the relevant six-month period constituted a separate theft offense, even if it involved the same victim. *See id.* at 515-17 (concluding that the defendant's thefts from the same victim did not constitute a

"continuing crime" over twenty-seven months because the former theft statute created instead a "single offense of theft" limited "to all discrete acts of theft committed by the same person within any six-month period").

¶ 30    *Roberts* rejected the theory that the defendant's multiple takings from the same victim over twenty-seven months constituted a single theft offense, *id.* at 515-16, 518, and thus the *Roberts* court concluded that the trial court should have instructed the jury to determine the value of the things taken within a period of six months.  *Id.* at 518 ("[T]he jury was never instructed to determine whether the value of the things involved was $15,000 or more as the result of the defendant's having committed theft two or more times within a period of six months.").

¶ 31    After the *Roberts* decision, the legislature amended section 18-4-401(4) by (1) changing the six-month unit of prosecution from being a *mandatory* charge to a discretionary one, *see* Ch. 244, sec. 2, § 18-4-401(4), 2009 Colo. Sess. Laws 1099 (providing that "two or more . . . thefts *may* be aggregated and charged in a single count") (emphasis added); and (2) adding an additional subsection allowing two or more crimes of theft committed "against the same

person pursuant to one scheme or course of conduct" to be "aggregated and charged in a single count, in which event they shall constitute a single offense," Ch. 244, sec. 2, § 18-4-401(4), 2009 Colo. Sess. Laws 1100. These subsections now provide the exclusive methods for aggregating and charging thefts in a single count.

¶ 32    The prosecution charged defendant with one count of theft of $20,000 or more, but no check or deposit received from the SSA exceeded $674.00[2]. So, the jury necessarily would have had to aggregate multiple payments to find that defendant took $20,000 or more. Even if the jury had been properly instructed as to how to aggregate the thefts under section 18-4-401(4)(a) or (b), it could not have legally found defendant guilty of theft of $20,000 or more because of the statute's different requirements in its pre- and post-2009 versions. The most the jury could have legally aggregated under the *pre*-2009 "mandatory-within six months" version (now

---

[2] At trial, the prosecution admitted an exhibit titled "A Detailed Explanation Of Your OverPayment." It showed that from January 2008 to December 2008, the SSA overpaid $637 each month; and from January 2009 to January 2011, the SSA overpaid $674 each month.

section 18-4-401(4)(a)) would have been (1) $3822 from January 2008 to June 2008; (2) $3822 from July 2008 to December 2008; and (3) $3370 from January 2009 to May 2009. And the most the jury could have legally aggregated under the *post*-2009 "discretionary-same victim" version (now section 18-4-401(4)(b)) would have been $13,480 from June 2009 to January 2011. Thus, the trial court erred when it entered judgment for a class 3 felony on the jury's verdict finding defendant had taken $20,000 or more.

## C.    Remedy

¶ 33    We agree with the People that the proper remedy is to vacate the judgment of conviction for one class 3 felony theft count and remand the case to the trial court to enter judgment of conviction for four class 4 felony theft counts. The prosecution charged defendant with one count of theft of $20,000 or more (a class 3 felony theft), and the jury found him guilty of theft of $20,000 or more. Implicit in defendant's conviction for the class 3 felony theft are four class 4 felony theft convictions:

1. Within the six-month period of January 1, 2008, to June 30, 2008, defendant stole $3822. This supports one class 4 felony theft conviction under the pre-2009

16

amended statute.  *See* § 18-4-401(1)(a), (2)(d), (4), C.R.S. 2008.

2. Within the six-month period of July 1, 2008, to December 31, 2008, defendant stole $3822.  This supports one class 4 felony theft conviction under the pre-2009 amended statute.  *See id.*

3. Within the five-month period of January 1, 2009, to May 10, 2009, defendant stole $3370.  This supports one class 4 felony theft conviction under the pre-2009 amended statute.  *See id.*

4. Between May 11, 2009, and January 31, 2011, defendant stole $13,480.  This supports one class 4 felony theft conviction under the post-2009 amended statute.  *See* § 18-4-401(1)(a), (2)(c), (4)(b), C.R.S. 2009.

¶ 34     *See Mata-Medina v. People*, 71 P.3d 973, 981 (Colo. 2003) ("We recently confirmed that appellate courts can acknowledge implicit jury findings."); *People v. Sepulveda*, 65 P.3d 1002, 1005-06 (Colo. 2003) (concluding that because the jury "found that [the defendant] acted intentionally, or with the conscious objective of causing death, [it] implicitly found that [the defendant] acted knowingly");

*People v. Bowers*, 187 Colo. 233, 238, 530 P.2d 1282, 1285 (1974) ("The jury, by finding appellant guilty of the greater offenses, necessarily found he was guilty of the lesser offenses.  Under these circumstances, as a matter of law the appellant was guilty of the lesser offenses.").[3]

¶ 35    Defendant argues that — by reforming the judgment from one conviction to four — we are depriving him of his constitutional due process right to be notified of the charges made against him.  U.S. Const. amend. VI; Colo. Const. art. II, § 16.  But we are not persuaded.

¶ 36    It is "ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him."  *Schmuck v.*

---

[3] Although the jurors were instructed to determine whether defendant had stolen $20,000 or more — and not the full $24,494 — we discern that the jury verdict reflected a unanimous agreement as to all the charged thefts because (1) the "evidence at trial included nothing that would lead a juror to conclude that the acts of" theft "occurred on some occasions . . . but not on others"; (2) the defense was "general" and did not provide "an individualized defense aimed at discrete alleged instances"; and (3) the "evidence presented no rational basis for some jurors to predicate guilt on one act while other jurors based it on another."  *Thomas v. People*, 803 P.2d 144, 154-55 (Colo. 1990).

*United States*, 489 U.S. 705, 717 (1989).  To satisfy this doctrine, the "notice [of charges] given must be sufficient to advise the accused of the charge, to give him a fair and adequate opportunity to prepare his defense, and to ensure that he is not taken by surprise because of evidence offered at the time of trial."  *People v. Garcia*, 940 P.2d 357, 362 (Colo. 1997) (quoting *People v. Cooke*, 186 Colo. 44, 46, 525 P.2d 426, 428 (1974)).  For example, a defendant is deemed, as a matter of law, to have "adequate notice" of an uncharged offense that meets the definition of a lesser included offense of the original charge against him.  *People v. Duran*, 272 P.3d 1084, 1095 (Colo. App. 2011).  So, even though the prosecution did not charge defendant with four class 4 felony theft counts, the question is whether his constitutional due process right to receive "adequate notice" of the four class 4 felony thefts was satisfied by his being charged with the one original class 3 felony theft.

¶ 37     We conclude that it was.  The record clearly shows that defendant had actual notice of each specific instance of theft on which the prosecution based its original charge.  Before the charge was even filed, the SSA gave defendant a detailed list of all

19

thirty-seven instances of "overpayment" with the date and amount paid. The prosecution's complaint covered all these instances when it charged defendant with theft "[b]etween and including January 1, 2008 and January 31, 2011." And in a pre-trial hearing, defendant was ordered to release all his bank records reflecting the charged time period so that the prosecution could show the deposits made by the SSA. Given the complaint and pre-trial discovery, defendant had ample notice that he would need to defend against all thirty-seven instances of theft. So we conclude that by reforming the judgment to impose four class 4 felony thefts, we do not violate his right to due process. *See People v. Williams*, 984 P.2d 56, 65 (Colo. 1999) (concluding that, where the information charging the defendant with first degree criminal trespass did not specify the ulterior crime he intended to commit on trespassing, he was not prejudiced in the preparation of his defense because "under the surrounding circumstances, [he] was sufficiently advised of the ulterior crimes"); *see also Garcia*, 940 P.2d at 363 ("[D]ue process is a flexible concept, and its exact contours must be determined by the facts of each case.").

¶ 38    Other cases support this logic.  *See United States v. Lacy*, 446 F.3d 448, 452 (3d Cir. 2006) (finding defendant's rights were "adequately protected" where he was convicted of multiple lesser included offenses from one charged offense); *State v. Erivez*, 341 P.3d 514, 518-19 (Ariz. Ct. App. 2015) (noting defendant's due process rights were not violated where he was charged with aggravated assault but, after additional jury instructions, convicted of assault and disorderly conduct); *People v. Eid*, 328 P.3d 69, 89-90 (Cal. 2014) ("Because a charged offense puts a defendant on notice of all uncharged lesser included offenses, defendants had notice of, and the opportunity to defend against, the two uncharged lesser included offenses of which they were convicted.").

¶ 39    Also, "[w]e are required to retain as many convictions and uphold as many sentences as are legally possible to effectuate fully the jury's verdicts."  *People v. Lee*, 914 P.2d 441, 448 (Colo. App. 1995).  Because we must maximize the effect of a jury's verdict to yield as many convictions as possible, *see People v. Glover*, 893 P.2d

1311, 1315 (Colo. 1995), we remand for correction of the mittimus and resentencing on the four class 4 felony theft convictions.[4]

## V. Conclusion

¶ 40 The judgment of conviction for class 3 felony theft is vacated and the case is remanded for the court to (1) correct the mittimus by entering judgment for four class 4 felony theft convictions and (2) resentence defendant accordingly.

JUDGE NAVARRO and JUDGE CASEBOLT concur.

---

[4] We recognize that the principle that we must maximize the effect of a jury's verdict to yield as many convictions as possible has been used primarily to correct multiplicitous convictions. But we see no reason why the logic behind that principle — to fully effectuate the jury's verdict — should not also apply here.